IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Michelle M. Erkson, )<br>                                    )<br>                    Plaintiff, )<br>                                    )<br>            vs.                    )<br>                                    )<br>Jo Anne B. Barnhart,          )<br>Commissioner of Social Security, )<br>                                    )<br>                    Defendant. )<br>_____ ) | Civil Action No. 6:04-21883-JFA-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

        This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

        The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

        The plaintiff previously filed applications for DIB and/or SSI in March 1994, November 1995, April 1996, all of which were denied at the initial level of administrative review (Tr. 14).

_____

        [1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff filed her current applications for DIB and SSI on December 20, 2001, and April 23, 2002, respectively, alleging a disability onset date of March 29, 2001, as a result of a broken right arm and congenital left arm loss below the elbow (Tr. 127-29, 175, 465-68). Her claims were denied initially and upon reconsideration (Tr. 108-14, 469-72). The plaintiff then requested a hearing before an administrative law judge (ALJ), which was held January 21, 2004 (Tr. 35-98). The ALJ issued a decision on April 19, 2004, issued a decision denying the plaintiff's claims and making the following findings (verbatim):

(1)    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

(2)    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

(3)    The claimant's congenital amputation of left forearm below elbow joint, status post fracture of right humerus, obesity, and substance abuse disorder are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

(4)    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(5)    The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

(6)    I find the claimant retains the following residual functional capacity: she can use her left arm for assistance, bending the arm at the elbow; lift and carry 35 to 40 pounds; sit, stand and walk six hours each or eight hours in combination; and perform no climbing of ladders, ropes or scaffolds or crawling.

(7)    The claimant's past relevant work as a cashier (fast food) did not require the performance of work-related activities precluded by her residual functional capacity. (20 CFR §§ 404.1565 and 416.965).

2

(8)    The claimant's medically determinable congenital amputation of left forearm below elbow joint, status post fracture of right humerus, obesity, and substance abuse disorder do not prevent the claimant from performing her past relevant work.

(9)    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(e) and 416.920(e)).

(Tr. 24-25).

The Appeals Council denied the plaintiff's request for review on July 27, 2004, 2004, thus making the ALJ's decision the Commissioner's "final decision" for purposes of judicial review (Tr. at 7-9).  *See* 42 U.S.C. §405(g); 20 C.F.R. §416.1481 (2003).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## EVIDENCE PRESENTED

The plaintiff was born on November 27, 1967; she was 33 years old at the time of her alleged onset of disability and 36 years old at the time of the ALJ's decision (Tr. 127).  She has two years of college education and has worked as a cashier and dietary aide (Tr. 176, 181).

### Medical Evidence

Dr. Robert E. Thompson examined the plaintiff on June 12, 1996, and found that she had a marked deformity of the left upper extremity with rudimentary hand and shortened forearm (Tr. 206).  He found she had full range of motion of the left elbow and shoulder, normal strength in the left upper arm, and full motion of all joints except for some restriction of forward flexion of the lumbar spine (Tr. 206).  He reported diagnoses of

"congenital deformity of the left upper extremeity with quite atrophic painful forearm," history of asthma, and history of cervical dysplasia and pelvic pain (Tr. 206).

On March 29, 2001, the plaintiff presented at St. Louise Regional Hospital with complaints of right shoulder pain and deformity following a motor vehicle accident (Tr. 231). X-rays showed a comminuted spiral fracture of the right humerus (Tr. 232). Robert Petty, D.O., prescribed a shoulder splint and Vicodin (Tr. 231).

The plaintiff returned to the hospital on April 1, 2001, complaining of pain in the right forearm and hand and numbness in the fingers (Tr. 218). Examination revealed marked swelling and discoloration, excellent pulses, good capillary refill, normal sensation (Tr. 218). The plaintiff was reassured and discharged in good condition (Tr. 218).

On April 24, 2001, the plaintiff saw Dr. Craska for a second opinion on her right arm fracture (Tr. 263). Dr. Craska found marked swelling and tenderness, noted an assessment of angulated, displace comminuted fracture of the right humerus, and placed her in a long-arm splint and sling (Tr. 263). On April 30, 2001, the plaintiff underwent open reduction and internal fixation for treatment of delayed union and malunion of the right humerus, performed by James Pucelik, M.D. (Tr. 25-51).

On May 11, 2001, Dr. Craska removed staples from the surgical wound in the plaintiff's right arm (Tr. 261). Dr. Craska found the wound was healing well and noted that the plaintiff's only complaint was inadequate pain relief (Tr. 261). On June 6, 2001, Dr. Craska referred the plaintiff to physical therapy to improve motion in her right shoulder and elbow joints and continued her prescription for Elavil (Tr. 257). Dr. Craska also noted that the plaintiff was undergoing treatment for alcoholism and had been sober for 30 days (Tr. 257).

On March 25, 2002, Roland M. Knight, M.D., examined the plaintiff at the request of the Commissioner (Tr. 270-72). The plaintiff related that she had been using her right arm for all activities for several months and was gradually improving, but complained

4

of difficulty with gripping and opening jars and with picking up objects weighing more than 35 to 40 pounds (Tr. 270). She reported that she took no medications regularly, smoked two packs of cigarettes per day, and drank one pint of whiskey per day (Tr. 270-71). The plaintiff also complained of depression during the past three to four years (Tr. 271). On examination, Dr. Knight found the plaintiff had a congenitally amputated left forearm with some loss of supination and pronation in the stump; minimally restricted range of motion of the right upper extremity; normal gross and fine movement in the right hand; good strength in both upper extremities; normal reflexes in all extremities; normal grip strength in the right hand; and no limitation of the axial spine or lower extremities (Tr. 271-72). X-rays of the plaintiff's right shoulder showed a normal acromioclavicular joint and scapula, intramedullary nails in the humerus, and a healed fracture of the humerus in good alignment (Tr. 271). Dr. Knight reported diagnoses of "[c]ongenital amputation of left forearm below elbow joint distal to insertion of biceps;" "[s]tatus post fracture, right humeral shaft and internal fixation;" obesity; and alcohol and nicotime abuse (Tr. 272).

On March 29, 2002, in a telephone conversation with a Social Security Claims Representative, the plaintiff stated that she became depressed off and on but that her depression was not disabling. The plaintiff stated that she had no problems with memory or concentration and was able to do what she needed to do (Tr. 184).

On April 8, 2002, a State Agency physician assessed the plaintiff's residual functional capacity at the request of the Commissioner based on a review of the plaintiff's records (Tr. 273-80). The physician reported that the plaintiff could perform light work that did not involve reaching, handling, fingering, feeling, pushing, pulling, or operation of hand controls with the left upper extremity; climbing of ladders, ropes or scaffolds; and more than occasional crawling (Tr. 274-77). The physician's assessment was affirmed by another State Agency physician on October 1, 2002 (Tr. 280).

On October 23, 2002, the plaintiff presented at Greenville Memorial Medical Center with complaints of pain in the right elbow and shoulder and a tingling sensation in the right hand after falling down stairs (Tr. 282, 286). Diagnoses of right forearm strain and shoulder/trapezius muscle spasm were rendered (Tr. 286).

On October 31, 2002, the plaintiff sought treatment for depression at Greenville Mental Health Center on the advice of her "Family and Disability lawyer" (Tr. 315). The plaintiff related that her husband, her "sole provider," had been incarcerated on a probation violation and that she was unable to perform her previous work due to a broken arm (Tr. 315). She stated that she had been arrested in March 2001 in California for possession of amphetamines and sentenced to a drug rehabilitation program (Tr. 316). She explained that she had not yet attended such a program because she was injured in a motor vehicle accident on the way home from jail and had been on pain medication ever since (Tr. 316). Janet Gibson, M.Ed., found the plaintiff was fully oriented and had appropriate speech and affect; no impairment in concentration or intelligence; some difficulty with remote and recent memory; and fair judgment and insight (Tr. 317-18). Ms. Gibson noted an impression of adjustment disorder with mixed anxiety and depressed mood, and amphetamine dependence in full remission (per the plaintiff's report) (Tr. 318).

On February 5, 2003, the plaintiff was admitted to the Earl E. Morris Alcohol and Drug Addiction Treatment Center for alcohol and cocaine abuse (Tr. 302-06). The plaintiff reported a long history of alcohol, cocaine, amphetamine, and marijuana use (Tr. 302). She was discharged on March 19, 2003, with a primary diagnosis of alcohol/cocaine dependence and depression NOS (Tr. 296). On March 31, 2003, W.T. Mattison, M.D., saw the plaintiff in an aftercare appointment at Greenville Mental Health Center (Tr. 312). The plaintiff reported that she felt much better after 34 days of inpatient treatment at Morris and that she was no longer depressed, but complained of restless sleep (Tr. 312). Dr. Mattison prescribed Prozac and Trazodone (Tr. 312).

6

On June 6, 2003, Michael A. Manley, M.D., saw the plaintiff at Greenville Mental Health Center (Tr. 307-10). The plaintiff related that she was living at her sister's home and taking care of her child and her sister's four children (Tr. 307). Dr. Manley noted that the plaintiff "apparently has been told that she cannot lift anything over 5 pounds and feels that this eliminates any jobs that she might do" (Tr. 307). Dr. Manley found that the plaintiff's speech was coherent and relevant, that her mood was "nervous and panicky at times," and that her affect was appropriate (Tr. 308). He rendered an impression of depressive disorder NOS, alcohol dependence in partial remission, and cocaine abuse/rule out dependence (Tr. 309).

From April through October of 2003, the plaintiff continued sporadically with treatment at Greenville Mental Health Center (Tr. 419). Her treatment there consisted of medication monitoring and support and encouragement of abstinence from alcohol and drugs (Tr. 419).

On October 14, 2003, C. David Tollison, Ph.D., evaluated the plaintiff (Tr. 393-96). The plaintiff reported that she had worked in the fast-food, clerical and "dietary" fields, but that she had not held any job for a long period of time because of boredom (Tr. 393). She related that she had visited her grandfather once or twice per month, received visits from family members, went to church fairly regularly, drove, prepared meals, did some household chores, had no close friends, and did not socialize (Tr. 395). She complained of sadness, dysphoria, apathy, low energy, feelings of guilt and hopelessness, and two-to-three crying episodes per month (Tr. 394). Dr. Tollison found the plaintiff conversed fluidly and had intact thought processes and memory, low-average intelligence, and no delusions, hallucinations, or psychotic symptoms (Tr. 394). He found her test results evidenced significant depression and reported diagnoses of affective disorder (dysthymia), personality disorder, and substance abuse disorder (in remission) (Tr. 395-96). Dr. Tollison also stated that the plaintiff did not "exhibit the concentration, persistence, or pace typically required

7

in a work setting," and that it was unlikely that she could maintain the productivity, attendance, and punctuality necessary to work (Tr. 396).

In a Medical Assessment of Ability To Do Work-Related Activities (Mental) completed on the same date, Dr. Tollison reported that the plaintiff had fair ability in most areas, good ability to understand, remember, and carry out simple job instructions and maintain personal appearance, and poor ability to deal with stress (Tr. 397-98).  Dr. Tollison also completed a Psychiatric Review Technique form in which he indicated that the plaintiff satisfied the criteria of the listed impairments for affective disorders and personality disorders and that she had "marked" limitations in activities of daily living, social functioning, and concentration/persistence/pace (Tr. 399-412).

On November 3, 2003, the plaintiff was treated at Bon Secours St. Francis Hospital for complaints of right arm pain (Tr. 421-32).  An x-ray showed post surgical changes in the humerus, normal forearm, and no acute abnormalities (Tr. 432).

**Plaintiff's Testimony**

At the hearing on January 21, 2004, the plaintiff testified that her job as a cashier involved lifting up to ten pounds, operating a cash register, and stocking, and that she left that job because she did not get along with the manager (Tr. 45-47).  She testified that she quit her job as a cashier in a fast-food restaurant because the company was discriminating against certain employees (Tr. 50-51).  She testified that she left other jobs after short periods because they were boring and that she had never lost a job because of her substance abuse (Tr. 51-52, 58).  She also testified that she believed depression had "a lot to do" with why jobs were boring for her (Tr. 81).  She testified that she was unable to work because she had difficulty lifting any weight with her right arm and because she had difficulty bending over due to arthritis in her lower back (Tr. 64-65).  She testified that she had tendinitis and tennis elbow in her right arm, but also testified that three or four times per week she experienced numbness and pain in her legs to the point that she was unable

8

to move, but also testified that she received no medical treatment for this condition (Tr. 73). She testified that she was seeing a counselor at a mental health center and taking Prozac for treatment of depression (Tr. 78-80). She testified that on a normal day she picked up around the house, vacuumed, helped her child and her sister's four children with their homework, and made dinner for a household of eight (Tr. 82-85).

**Vocational Expert Testimony**

Karl S. Weldon, M.A., a vocational expert, testified that the plaintiff's past job as a cashier was light work and that her past work as a dietary aide was light-to-medium work (Tr. 93-94). The ALJ asked Mr. Weldon to consider an individual who could use her left arm only as an assist; could lift 35 to 40 pounds; could sit, stand, or walk for six hours in an eight-hour day; and could not climb ladders or crawl (Tr. 93-95). Mr. Weldon testified that, with those limitations, the plaintiff could perform her past work as a cashier in a fast-food restaurant and as a dietary aide (Tr. 93-95).

**Administrative Decision**

The ALJ followed the five-step sequential evaluation process to determine that the plaintiff was not disabled. At the first step, he found the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (Tr. 24, Finding 2). At the second step, the ALJ found that the plaintiff suffered from an impairment or a combination of impairments considered "severe" (Tr. 24, Finding 3). At the third step of the sequential evaluation, however, the ALJ found that the plaintiff's impairments did not meet or medically equal a listed impairment (Tr. 25, Finding 4).

At the fourth step, the ALJ assessed the plaintiff's residual functional capacity (RFC) and determined that she can use her left arm for assistance, bending the arm at the elbow; lift and carry 35 to 40 pounds; sit, stand and walk six hours each or eight hours in combination; and perform no climbing of ladders, ropes or scaffolds or crawling (Tr. 25, Finding 6). In reaching this conclusion, the ALJ considered the relevant medical evidence

9

and the hearing testimony regarding the plaintiff's symptoms and limitations. Based upon this RFC, the ALJ found that the plaintiff's impairments did not preclude her from performing past relevant work activity (Tr. 25, Finding 8). Therefore, the ALJ found that the plaintiff was not disabled as defined by the Social Security Act (Tr. 25, Finding 9).

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually

performed the work. SSR 82-62. The plaintiff bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). She must make a *prima facie* showing of disability by showing that she is unable to return to her past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## ANALYSIS

The plaintiff contends that the ALJ erred by failing to specifically assess the plaintiff's mental capacities, by failing to conduct the DAA assessment in conformity with HALLEX I-5-3-14A, and by finding that depression is not a severe impairment at step two of the sequential evaluation. The plaintiff seeks remand for these issues to be corrected.

### *Mental RFC and Substance Abuse*

The ALJ found that the plaintiff had depressive symptoms but further found that "[a]bsent her substance abuse, she has no severe emotional impairments" (Tr. 24). Disability due to drug addiction or alcoholism is not a proper basis for an award of benefits. *See* 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.935. In cases where drug addiction or alcoholism are involved, adjudicators must determine whether the claimant is disabled taking the drug addiction or alcoholism into consideration. *Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If the adjudicator finds that the claimant is disabled with drug addiction or alcoholism, the adjudicator must determine whether the addiction is material, or rather, whether the claimant would be disabled if he or she stopped using drugs or alcohol. *Id.*

As noted by the plaintiff, the ALJ clearly believed that drug and alcohol abuse had an impact on her ability to work (Tr. 23-24). However, the ALJ did not provide a

12

specific assessment of the plaintiff's actual functioning considering the effect of her past use of alcohol and drugs.

In October 2003, approximately eight months after she was released from Morris Village, Dr. Tollison noted that the plaintiff "appears to have struggled with a variable intensity of depression most all of her life" and assessed her functional capacities in fifteen separate areas of functioning.   However, the ALJ dismissed Dr. Tollison's report commenting that "the claimant hasn't even been substance-free long enough to evaluate whether she has primary depression" (Tr. 23).   The ALJ did not explain or otherwise articulate how long was long enough for the plaintiff to be substance-free to evaluate her depressive symptoms.

"A decision not supported by substantial evidence must be reversed. Additionally, '[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed id grounds for reversal." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (quoting *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984)).   "The ALJ is required to articulate at some minimum level, [her] analysis of the evidence." *Boiles v. Barnhart*, 395 F.3d 421 425 (7th Cir. 2005) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)).   In her opinion, the ALJ appears to be persuaded that substance abuse by the claimant is a contributing factor material to the determination of disability (Tr. 23-24).  However, the ALJ does not explain her analysis of the evidence to support this conclusion, and therefore, it is impossible for this court to determine whether appropriate legal principles have been followed.  Accordingly, upon remand, the ALJ should articulate her analysis of the evidence with regard to her finding that, excluding the substance abuse, the plaintiff does not have severe emotional impairments.

13

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

IT IS SO RECOMMENDED.


s/William M. Catoe
United States Magistrate Judge

August 8, 2005

Greenville, South Carolina